FILED
2026 Jun-15  PM 04:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

|  |  |
|---|---|
| **ESTATE OF JAIDEN RASHAD DEJARNETT,** *by and through its duly-appointed administrator Reginald McKenzie, et al.*, <br><br>        **Plaintiffs,** <br><br> **v.** <br><br> **CITY OF DECATUR, ALABAMA,** *et al.*, <br><br>        **Defendants.** | **Case No. 5:25-cv-1273-HDM** |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Reginald McKenzie sues the City of Decatur, Alabama (the "City"), and various law enforcement and public officials for the death of Jaiden Rashad Dejarnett following a high-speed police pursuit on September 4, 2023. (Doc. 1). The Complaint names the following as defendants: the City, Officer Mac Bailey Marquette of the Decatur Polce Department, Mayor Tab Bowling, Police Chief Todd Pinion, and Lieutenant Joe Renshaw (collectively, the "Defendants"). *Id.* at 1. McKenzie, acting in both his own right and as the administrator of Dejarnett's estate (the "Estate"), has brought three claims. In Count One, Plaintiffs allege that Defendant Officer Marquette used unconstitutionally excessive force in violation of the Fourth and Fourteenth Amendments during his pursuit of Dejarnett. *Id.*, ¶¶ 32–

35. In Count Two, Plaintiffs allege that the City, Mayor Bowling, Police Chief Todd Pinion, and Lieutenant Renshaw maintained customs, practices, and policies—including inadequate training, supervision, and discipline of the City's officers—such that they were deliberately indifferent to Dejarnett's constitutional rights. *Id.*, ¶¶ 36–41. Finally, in Count Three, Plaintiffs allege that all Defendants violated Alabama's wrongful death statute by engaging in conduct that a reasonable officer or municipality would not have engaged in under the same or similar circumstances. *Id.*, ¶¶ 42–45.

On September 8, 2025, the City, Bowling, Pinion, and Renshaw moved to dismiss the Complaint, (doc. 8), and Marquette did the same on October 9, 2025, (doc. 21). The Estate and McKenzie subsequently moved to convert the City, Bowling, Pinion, and Renshaw's motion to dismiss into a motion for summary judgment, (doc. 24), and to strike Marquette's motion to dismiss or, in the alternative, allow a response in opposition, (doc. 26). The court has reviewed these motions and the related briefing. (*See* docs. 8–9, 12, 18, 21–22, 24–30). For the reasons stated in this memorandum opinion and order, the court **GRANTS** the motions to dismiss, (docs. 8, 21), **DENIES AS MOOT** Plaintiffs' motion to convert defendants' motion to dismiss into a motion for summary judgment, (doc. 24), **DENIES** Plaintiffs' motion to strike Marquette's motion to dismiss, (docs. 26), and **GRANTS** the motion for leave to file a response in opposition, (doc. 26).

## BACKGROUND

The Estate and McKenzie pleaded the following facts, accepted here as true:

On September 4, 2023, at approximately 3:00 a.m., sixteen-year-old Jaiden Rashad Dejarnett was driving alone in Decatur, Alabama. (Doc. 1, ¶¶ 1, 15). Officer Marquette and other City police officers initiated a traffic stop on Dejarnett because Dejarnett was driving without headlights and/or taillights in the dark. *Id.*, ¶ 15. Dejarnett did not stop his vehicle, *id.*, ¶¶ 15–18, and a high-speed pursuit ensued, at times reaching speeds in excess of one hundred thirty-five miles per hour, *id.*, ¶ 18. Dejarnett never yielded to the officers' attempt to conduct a traffic stop, and the pursuit ended when Dejarnett crashed. *Id.*, ¶ 21. Plaintiffs do not allege that Marquette or any other officer ever made contact of any kind with Dejarnett, or that Marquette's or any other officer's vehicles were involved in the crash. *See id.*, ¶¶ 15–31.

Plaintiffs allege that Marquette was involved in a "separate police killing" of another young man weeks later, which, they claim, is indicative of a "pattern of reckless behavior" within the Decatur Police Department, but Plaintiffs offer no details regarding this separate incident or whether it involved a vehicle pursuit. *See id.*, ¶ 26. They also allege that Bowling, Pinion, and Renshaw all had "actual or constructive knowledge of repeated failures by officers of the Decatur Police

Department to comply with pursuit protocols," *id.*, ¶ 28, but, again, offer no details regarding what other "repeated failures" to which they are referring, *see id.*

Plaintiffs further allege that it was the City's duty, by and through its authorized agents, servants, and employees (including Marquette, Pinion, and Renshaw), to refrain from neglectful, careless and unskilled conduct so as not to injure Dejarnett, and that Marquette, Pinion, and Renshaw violated Dejarnett's federal rights by acting unreasonably and recklessly. *Id.*, ¶¶ 23–24. Specifically, Plaintiffs allege that the City failed to properly train or supervise its officers; Pinion, as Chief of Police, failed to implement proper training and supervision in relation to vehicular pursuits; Renshaw, as the on-duty supervisor, failed to intervene or call off the pursuit of Dejarnett; and Bowling, as the mayor, failed to take meaningful action to address deficiencies in police accountability, training, or oversight. *Id.*, ¶¶ 27–31.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015) (internal quotation marks omitted). Similarly, a

4

formulaic recitation of the elements of a cause of action is inadequate. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In considering the facts, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). To survive a motion to dismiss, a plaintiff must merely produce enough facts to "raise a reasonable expectation that discovery will reveal evidence" of the necessary elements of his or her claim. *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556). The pleading standard "requires only a plausible short and plain statement of the plaintiff's claim, not an exposition of his legal argument." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). At this stage, the issue is "not whether [the plaintiff] will ultimately prevail . . . but whether his complaint was sufficient to cross the federal court's threshold." *Id.* (internal quotation marks and citations omitted).

## DISCUSSION

I. **Motion to Convert Defendants' Motion to Dismiss into a Motion for Summary Judgment**

Plaintiffs move to convert the City, Bowling, Pinion, and Renshaw's motion to dismiss into a motion for summary judgment because they attached three exhibits to their motion to dismiss that were not a part of the pleadings. (*See* Doc. 24).

Under Federal Rule of Civil Procedure 12,

> [W]hen ruling on a Rule 12(b)(6) or 12(c) motion, a court generally may not consider matters outside of the pleadings without treating the motion as a motion for summary judgment, and if it treats the motion as one for summary judgment, the court must give a reasonable opportunity for the parties to present all evidence that is relevant to the motion.

*Johnson v. City of Atlanta*, 107 F.4th 1292, 1298 (11th Cir. 2024) (citing Fed. R. Civ. P. 12(d)). In this case, the court finds it unnecessary to consider any exhibits outside of the pleadings to resolve the pending motions, and Plaintiffs' motion is **DENIED AS MOOT**.

## II.     Motion to Strike Defendant Marquette's Motion to Dismiss, and Alternative Motion for Leave to File Response in Opposition

Plaintiffs move to strike Marquette's motion to dismiss because it was filed on October 9, 2025, instead of the October 8, 2025, deadline. Marquette's counsel informed the court that this delay of less than 24 hours in filing was due to an inadvertent calendaring error and was not done for the purpose of delay or any other improper purpose. (Doc. 29 at 2). Plaintiffs have not demonstrated that this insignificant delay in filing prejudiced them in any way. The court further notes that Marquette's motion to dismiss is based upon Rule 12(b)(6), and not any of the defenses provided for in Rule 12(b)(2)–(5) that would be waived if not timely asserted. *See* Fed. R. Civ. P. 12(h). Accordingly, the court **DENIES** the motion to strike Marquette's motion to dismiss.

6

Plaintiffs move in the alternative for leave to file a response in opposition, and Plaintiffs include the response brief with the filing. (Doc. 27 at 4). The court **GRANTS** this motion for leave, and the court is in receipt of Plaintiffs' response in opposition.[1]

### III.    Defendants' Motions to Dismiss

Marquette moves for the dismissal of Counts One and Three, while the City, Bowling, Pinion, and Renshaw move for the dismissal of Counts Two and Three. (*See* docs. 8, 21). For the reasons laid out below, both motions to dismiss are **GRANTED**.

### Count I: 42 U.S.C § 1983 – Excessive Force/Unreasonable Seizure

### (Marquette)

Plaintiffs first allege that Officer Marquette[2] engaged in conduct that constituted an unreasonable seizure and use of excessive force in violation of the Fourth and Fourteenth Amendments. (Doc. 1, ¶¶ 32–35). This is also the alleged constitutional violation underlying the § 1983 municipal liability claims against the City and remaining defendants.

---

[1] By granting this motion, the court is not permitting additional briefing. Rather, the court accepts and takes into consideration Plaintiffs' response in opposition that was previously filed. (Doc. 27 at 4).

[2] Plaintiffs also named "other unknown officers of the City of Decatur" and asserted this count against "other officers," but, since fictitious party practice is generally not allowed in federal court, these claims are dismissed against the fictitious officers. *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010).

## A. Fourth Amendment

The Fourth Amendment covers only "searches and seizures." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998). No one suggests there was a search, and Plaintiffs have not plausibly alleged a seizure under Supreme Court and Eleventh Circuit precedent. In *Brower v. County of Inyo*, the Supreme Court made clear that a seizure occurs only through means intentionally applied to terminate freedom of movement, and no Fourth Amendment seizure would take place where a "pursuing police car [seeks] to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit"—even if there is a subsequent crash. 489 U.S. 593, 596–97 (1991). Indeed, the Eleventh Circuit has explicitly held that mere pursuit while attempting to seize a suspect is not a "seizure." *See e.g., Sanders v. City of Union Springs*, 207 F. App'x 960, 964 (11th Cir. 2006) (per curiam) ("A police pursuit in attempting to seize a person does not amount to a 'seizure' within the meaning of the Fourth Amendment"). And without an affirmative act leading to a seizure, "there cannot be a Fourth Amendment claim of unreasonable force." *Id.* at 965. Plaintiffs do not point this court to any case law to the contrary. (Doc. 12 at 4–5).[3]

---

[3] The Estate and McKenzie assert that, in the Eleventh Circuit, "a high-speed pursuit . . . can constitute a 'seizure' under the Fourth Amendment," but only cite to one case in support of that proposition. (Doc. 12 at 4). They cite and quote from *Carr v. Tatangelo*, 338 F.3d 1259, 1269–70 (11th Cir. 2003), claiming that the Eleventh Circuit "held that a high-speed chase ending in a crash could be an unreasonable seizure if the officer's actions were 'so reckless as to manifest an intent to stop the suspect by any means necessary, including means that would lead to a crash.'" (Doc.

It is clear from the face of the Complaint that Marquette initiated a traffic stop on Dejarnett after observing a traffic violation around 3:00 a.m. Dejarnett led Marquette in a high-speed pursuit after failing to yield to Marquette, but at no point did Marquette make physical contact of any kind with Dejarnett. The Complaint does not allege how Dejarnett crashed his car or whether a City police vehicle was even near Dejarnett at the time of this crash. All the Complaint alleges is that Marquette and/or other City officers pursued Dejarnett, and a police pursuit alone does not amount to a seizure under precedent from both the Supreme Court and the Eleventh Circuit. *Brower*, 489 U.S. at 596–97; *Sanders*, 207 F. App'x at 964.

Because the Complaint does not plausibly allege a seizure, the court dismisses the Fourth Amendment claim against Marquette.

## B. Fourteenth Amendment

It is unclear from the Complaint whether Count One alleges excessive force in violation of the Fourteenth Amendment or a violation of Dejarnett's substantive due process rights under the Fourteenth Amendment, so the court will discuss both.

First, claims of excessive force during an arrest, investigatory stop, or attempted seizure are governed by the Fourth Amendment. *Albright v. Oliver*, 510

---

12 at 4). The court reviewed *Carr* and found that the court held no such thing. In fact, *Carr* involves a case about an officer-involved shooting, not a high-speed pursuit or a crash. The word "crash" does not even appear in the opinion. This is a gross misrepresentation of law by the Estate and McKenzie which is addressed more thoroughly in the court's order to show cause. (Doc. 31).

U.S. 266 (1994); *Graham v. Connor*, 490 U.S. 386, 388 (1989); *Corbitt v. Vickers*, 929 F.3d 1304, 1313 (11th Cir. 2019), *cert. denied*, 590 U.S. 992 (2020); *Piazza v. Jefferson Cnty*, 923 F.3d 947, 952 (11th Cir. 2019); *J W by & through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1259 (11th Cir. 2018). The Supreme Court has held that Fourteenth Amendment claims for excessive force are reserved for pretrial detainees, not arrestees. *See Kingsley v. Hendrickson*, 576 U.S. 389, 393 (2015); *Crocker v. Beatty*, 995 F.3d 1232, 1246 (11th Cir. 2021). The Complaint confirms Dejarnett was not in custody but was fleeing in his vehicle, making a Fourteenth Amendment excessive force claim inapplicable.

Second, the allegations also fall short of stating a substantive due process claim under the Fourteenth Amendment. A substantive due process violation requires conduct that is "arbitrary, or conscience shocking, in a constitutional sense." *Wilcox v. Fenn*, 380 F. App'x 837, 839 (11th Cir. 2010) (quoting *Lewis*, 523 U.S. at 847). The Eleventh Circuit has rejected such claims even in cases involving physical contact by police vehicles, which is not alleged here. *See Wilcox*, 380 F. App'x at 839; *Barnwell v. Douglas Cnty*, 390 F. App'x 862 (11th Cir. 2010) (per curiam). "In the context of high-speed chases, 'only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation.'" *Sanders*, 207 F. App'x at 965 (quoting *Lewis*, 523 U.S. at 836).

10

This shock-the-conscience test has not been satisfied even when an officer initiated a traffic stop, pursued suspects at speeds of over 100 miles per hour, and accidentally crashed into and killed one of the suspects. *Lewis*, 523 U.S. at 836–37, 854–55. Here, Plaintiffs have not alleged conduct on behalf of Marquette that would shock the conscience, much less that Marquette intended to cause harm to Dejarnett. There is no allegation that Marquette or his vehicle were involved in any way with Dejarnett's crash, or that Marquette or any other officer made any contact with Dejarnett. Plaintiffs emphasize the high speed of the pursuit, but do not allege any facts from which the court could find Marquette did anything to cause Dejarnett's high speed driving in the first place. Accordingly, the allegations in the Complaint do not state a substantive due process claim.

**Count II: Municipal Liability (The City, Bowling, Pinion, and Renshaw)**

In Count II, Plaintiffs claim that the City, Mayor Bowling, Chief Pinion, and Lieutenant Renshaw have municipal liability under 42 U.S.C. § 1983. Specifically, they claim that the City maintained customs, practices, and policies—including inadequate training, supervision, and discipline of its officers—demonstrating deliberate indifference to Dejarnett's constitutional rights. They further claim that Bowling, Pinion, and Renshaw had direct supervisory and policymaking roles and failed to ensure adequate training, supervision, or discipline related to vehicular pursuits and use of force.

11

### A. The City of Decatur

In *Monell v. Department of Social Services of the City of New York*, the Supreme Court held that a "municipality cannot be held liable under § 1983 on a *respondeat superior* theory." 436 U.S. 658, 691 (1978). Instead, a municipality, such as the City of Decatur, is only liable under § 1983 when a municipal employee undertakes an action in "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id.* at 694. Accordingly, "to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). The Complaint fails to plausibly allege all three of these elements.

At the outset, the factual allegations in the Complaint do not show an underlying constitutional violation. As previously explained, Plaintiffs failed to state a claim for any use of force or seizure-related claims, as no force was ever used on Dejarnett, and he was never "seized" within the meaning of the Fourth Amendment. There is also a lack of plausible factual allegations in the Complaint to state a claim under the Fourteenth Amendment. The failure to adequately plead a constitutional violation alone forecloses this § 1983 claim.

12

However, the Complaint also fails to plausibly allege a custom or policy supporting *Monell* liability, or that the policy or custom caused the violation. A plaintiff seeking municipal liability under § 1983 must show either (1) a formal policy or (2) a "'custom' that has not been formally approved by an appropriate decisionmaker . . . so widespread [within the municipality] as to have the force of law." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997) (citing *Monell*, 436 U.S. at 690–91). Without this identification, a § 1983 claim is subject to dismissal. *See, e.g.*, *Harvey v. City of Stuart*, 296 Fed. App'x 824, 826 (11th Cir. 2008) (per curiam) (affirming dismissal of § 1983 claim against municipality because plaintiff "failed to identify any policy or custom that caused a constitutional violation, and his vague and conclusory allegations were insufficient to support the Complaint").

Here, Plaintiffs' conclusory allegation that the City maintained some "policies, practices, customs," (doc. 1, ¶ 27), is insufficient to state any *Monell* claim against the City. Because Plaintiffs fail to identify any officially promulgated policy of the City that allegedly violated Dejarnett's constitutional rights, Plaintiffs must sufficiently allege an informally-adopted custom that was the "moving force" behind the purported constitutional deprivation, *Brown*, 520 U.S. at 404, but they fail to do so.

As with the generic allegations regarding "policies, practices, customs" of the City, the Complaint also concludes in a similarly ambiguous manner that the City failed to train, supervise, and discipline its officers. (Doc. 1, ¶¶ 25, 27). Only in extremely limited circumstances may a municipality be liable under § 1983 for constitutional violations resulting from a failure to train its police officers. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "[T]he inadequacy of police training may serve as the basis for § 1983 liability **only** where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* (emphasis added). That is, "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." *Id.* at 389.

Here, Plaintiffs have not plausibly pleaded that the City had an unofficial custom or practice of inadequately training or supervising its police officers that was the moving force behind Dejarnett's alleged constitutional deprivation. The Complaint fails to allege a pattern of similar constitutional violations that provided notice of a need to train or supervise, as Plaintiffs do not allege a single prior incident giving the City notice of such a need. Similarly, Plaintiffs have not offered any allegations to explain why additional training or supervision was obviously necessary. Nor do they provide any details as to what they claim would have been constitutionally adequate training. The Complaint's conclusory allegations

regarding a single incident does little to provide any factual enhancement and certainly is insufficient to establish a widespread "pattern of similar constitutional violations" sufficient to show notice to the City of training insufficiency and deliberate indifference. *See Keith v. DeKalb Cty.*, 749 F.3d 1034, 1053 (11th Cir. 2014) (finding one prior incident insufficient notice of constitutionally deficient officer training); *Vielma v. Gruler*, 808 F. App'x 872, 881–84 (11th Cir. 2020) (per curiam) (finding the plaintiffs' second amended Complaint did not plausibly plead that city was deliberately indifferent to constitutional rights since the allegations were conclusory); *Denham v. Corizon Health, Inc.*, 675 F. App'x 935, 942–43 (11th Cir. 2017) (per curiam) (finding two prior incidents insufficient to support failure to train theory); *Stephens v. City of Tarrant*, No. 2:16-cv-274, 2017 WL 2797080, at *7 (N.D. Ala. June 28, 2017) (same).

As Plaintiffs have not pleaded sufficient facts to indicate that any failure to train or supervise on the part of the City had a direct causal link to any deprivation of Dejarnett's constitutional rights, Plaintiffs have not stated a claim against the City for direct violations of §1983.

## B. Bowling, Pinion, and Renshaw

The allegations against Mayor Bowling, Chief Pinion, and Lieutenant Renshaw in the Complaint consist of little more than a few barebones conclusions against them. The Complaint alleges that Pinion "failed to implement proper training

15

and supervision procedures, including as to vehicular pursuits[.]" (Doc. 1, ¶ 29). As to Renshaw, the Complaint concludes that he "failed to intervene or call off" the allegedly "unlawful pursuit," without any corresponding factual allegations that Renshaw had any reason to know about the pursuit or any other facts as to how he was supposedly in a position to intervene. *Id.*, ¶ 30. The Complaint vaguely asserts that Bowling "failed to take meaningful action to address longstanding deficiencies in police accountability, training, or oversight[.]" *Id.*, ¶ 31. Within Count II, the Complaint broadly contends that these defendants "failed to ensure adequate training, supervision, or discipline related to vehicular pursuits and use of force." *Id.*, ¶ 38.

These conclusory, formulaic allegations render the § 1983 claim legally insufficient under *Iqbal* and *Twombly*. There is a complete absence of allegations in the Complaint about any individual acts of Bowling, Pinion, and Renshaw, which reinforces the conclusory nature of the Estate's and McKenzie's Complaint. No facts alleged in the Complaint indicate that Bowling, Pinion, and Renshaw deprived Dejarnett of any constitutional rights, and therefore the Estate and McKenzie have not stated a claim for relief against Bowling, Pinion, and Renshaw under 42 U.S.C. § 1983.

16

**Count III: Wrongful Death (All Defendants)**

Federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. They also have "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). But a district court has discretion to decline to exercise supplemental jurisdiction over state-law claims when the district court has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004). In fact, the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial." *Id.* at 1089.

Having dismissed Plaintiffs' claims under federal law (Counts I–II), all that remains is Plaintiffs' state-law wrongful death claim. The court finds that Plaintiffs' state-law claim is best left for state courts to decide. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726–27 (1966). So the court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3), **GRANTS** the Defendants' motions to dismiss with respect to Count III, and dismisses Plaintiffs' wrongful death claim **without prejudice**.

17

## Qualified Immunity

Lastly, the court addresses Defendants' assertion that they are entitled to qualified immunity. Notwithstanding Plaintiffs' failure to allege sufficient facts that, if true, state a claim under § 1983 against the City, Marquette, Bowling, Pinion, and Renshaw, this court concludes that Defendants Marquette, Bowling, Pinion, and Renshaw, in their individual capacities, possess qualified immunity against Plaintiffs' § 1983 claims against them.

Qualified immunity from § 1983 actions protects government defendants sued in their individual capacities if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A motion to dismiss based upon qualified immunity will be granted if the "complaint fails to allege the violation of a clearly established constitutional right." *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001) (quoting *Williams v. Ala. State Univ.*, 102 F.3d 1179, 1182 (11th Cir. 1997)). A complaint must contain "specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003).

It is not alleged in this case that Marquette, Bowling, Pinion, or Renshaw had physical contact of any kind with Dejarnett, and the Complaint is entirely devoid of

facts that explain how Dejarnett crashed his car. No constitutional violation has been plausibly alleged. However, even if Plaintiffs could prove a constitutional violation by Marquette, Bowling, Pinion, or Renshaw, such that they would be liable to Plaintiffs under 42 U.S.C. § 1983, this court further concludes that it has not been adequately alleged that Marquette, Bowling, Pinion, or Renshaw "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. In the Eleventh Circuit, "the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Jenkins v. Talladega City Bd. of Educ.*, 115 F.3d 821, 827 n.4 (11th Cir. 1997). No such "clearly established law" existed in this case to give Marquette, Bowling, Pinion, or Renshaw fair notice that any behavior on their part would violate Dejarnett's constitutional rights, and Plaintiffs have not cited relevant case law from the Supreme Court, Eleventh Circuit, or Alabama Supreme Court to suggest otherwise.

For these reasons, the court concludes that Marquette, Bowling, Pinion, and Renshaw are entitled to qualified immunity from Section 1983 liability in their individual capacities, as no constitutional violation has been adequately alleged and no "clearly established law" indicated an unconstitutional nature of their behavior when they acted or refrained from acting.

## CONCLUSION

For the reasons stated in this memorandum opinion, the court **ORDERS** as follows:

1. Plaintiffs' motion to strike Marquette's motion to dismiss is **DENIED**, (doc. 26);

2. Plaintiff's motion for leave to file a response in opposition to Marquette's motion to dismiss is **GRANTED**, (doc. 26);

3. Plaintiffs' motion to convert defendants' motion to dismiss into a motion for summary judgment is **DENIED AS MOOT**, (doc. 24);

4. Defendants City of Decatur, Bowling, Pinion, and Renshaw's motion to dismiss is **GRANTED**, and the claims are **DISMISSED WITHOUT PREJUDICE**, (doc. 8); and

5. Defendant Marquette's motion to dismiss is **GRANTED**, and the claims are **DISMISSED WITHOUT PREJUDICE**, (doc. 21).

The court will allow Plaintiffs **thirty (30) days** to amend their complaint to cure the pleading deficiencies raised herein. If Plaintiffs do not file an amended complaint, the Clerk of Court will close this case without further notice.

**DONE** and **ORDERED** this 15th day of June, 2026.

_____

**HAROLD D. MOOTY III**
UNITED STATES DISTRICT JUDGE